Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
        *LWelling@sssfirm.com*
        *Skmeier@sssfirm.com*

Attorneys for Plaintiff John Roe AJ 1

$1435

**ELECTRONICALLY FILED**
Superior Court of California,
County of Solano
**09/04/2024 at 07:18:50 AM**
By: S. Brack, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SOLANO**

| | |
|---|---|
| John Roe AJ 1, <br><br> Plaintiff, <br><br> v. <br><br> THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; THE NAPA CALIFORNIA STAKE, THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 4 to 100, <br><br> Inclusive, <br><br> Defendants. | Case No.: CU24-06733 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **NEGLIGENCE** <br> 2. **NEGLIGENT SUPERVISION OF A MINOR** <br> 3. **SEXUAL ABUSE OF A MINOR** <br> 4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION** <br> 5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF** <br> 6. **BREACH OF MANDATORY DUTY** <br><br> **[DEMAND FOR JURY TRIAL]** |

Electronically Submitted on 09/04/2024 07:18 AM

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Plaintiff, John Roe AJ 1, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1.     This case involves egregious sexual and emotional abuse of a child.

2.     Over the course of approximately one year between 2000 and 2001, Plaintiff John Roe AJ 1 was groomed and sexually abused by the foremost religious authority within Defendants' Vallejo, California congregation. The extreme sexual abuse occurred primarily on Defendants' premises during Church activities and meetings, and involved not only underclothes fondling, but also multiple instances of anal rape.

## PARTIES

3.     Plaintiff John Roe AJ 1 ("**Plaintiff**") is an adult male under the age of forty at the time of this filing and a resident of the County of Solano, State of California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "John Roe AJ 1" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John Roe AJ 1 is entitled to protect his identity in this public court filing by not disclosing his name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by Perpetrator, hereinafter referred to as "**Perpetrator Hawkins**."

4.     Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.     Defendant The Church of Jesus Christ of Latter-day Saints (hereinafter "Church"), is and was at all relevant times herein mentioned, the religious entity, located at Vallejo, California, through which Perpetrator Hawkins held and used his position as "Bishop" to groom and sexually abuse Plaintiff. The Church of Jesus Christ of Latter-day Saints is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. The

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Church does business with and conducts continuous and systemic activities in California. The Church of Jesus Christ of Latter-day Saints' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  The Church is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of The Church. The divisions of the The Church are the wards, stakes and areas. The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6.     Defendant The Temple Corporation of The Church of Jesus Christ of Latter-day Saints (hereinafter "Temple Corporation") is and was at all relevant times herein mentioned, a religious entity and subsidiary of The Church. The Temple Corporation is a nonprofit corporation duly organized, and operating pursuant to the laws of, the State of Utah. The Temple Corporation operates properties, temples and other houses of worship within the State of California. The Temple Corporation does business with and conducts continuous and systemic activities in California. The Temple Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  The Temple Corporation is registered to do business in California, and operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7.     The Napa California Stake, The Church of Jesus Christ of Latter-day Saints, hereinafter referred to as "**The Napa California Stake**," is and was at all relevant times herein mentioned, a religious entity and subsidiary of The Church of Jesus Christ of Latter-day Saints. The Napa California Stake is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. The Napa California Stake does business with and conducts continuous and systemic activities in California. Its principal place of business is 2590 Trower Avenue, Napa, CA 94558.  The Napa California Stake is registered to do business in California, and operates, maintains and manages DOE 1's congregations and wards within Solano County at the direction of and under the control of DOE 1. The Napa California Stake has, or as alleged herein had, responsibility

1   for some or all operations in Solano County, California. It reports directly to The Church. The Napa

2   California Stake, is independently liable for its own conduct as alleged herein, is liable as a successor

3   in interest to another entity, and/or is an alter ego of Defendants.

4          8.     The Defendants each assumed responsibility for the wellbeing of their members,

5   whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other

6   positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday

7   School and Primary School teacher; Defendants and their agents placed individuals in positions of

8   responsibility and authority over Church members, including prospective members or invitees as

9   part of the shared congregation. As a result, they each had a special relationship with members,

10   prospective members, and invitees of the congregation, including the minor Plaintiff. This

11   relationship gave rise to a duty to protect members and others as part of the congregation, including

12   the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed

13   special responsibilities towards its members including having a disciplinary and red flagging system

14   meant to identify and track sexual predators and other dangerous individuals within the membership

15   in order to protect innocent child members and those mentioned herein from the harm they might

16   inflict.

17          9.     Defendants' income comes from member tithes which are turned over to the Church

18   for investment and other uses, including support of the administrative expenditures of the

19   Defendants' wards, stakes and areas. The Church does not provide information about their finances

20   to their members or the public. Upon information and belief, the Church receives more than seven

21   (7) billion dollars a year in tithing from members. Upon information reported publicly in the media,

22   The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of

23   200 billion dollars.

24         10.    The true name[s] and capacities, whether individual, plural, corporate partnership,

25   associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Plaintiff at this

26   time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes

27   and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally

28

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

12.     All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

13.     Perpetrator Hawkins was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

14.     During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over Plaintiff's abuser.

15.     Each Defendant is responsible, in some manner, for the events and happenings herein

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

16.     Except as otherwise noted, a reference to "Defendants" in this Complaint shall include The Church, The Temple Corporation, The Napa California Stake, and DOES 4 through 100, inclusive.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of Solano and the State of California.

18.     The subject incidents upon which this Complaint are based occurred in the City of Vallejo, within the County of Solano, in the State of California. As such, venue is proper in the Solano County Superior Court of California.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

19.     The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

20.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

21.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

22.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng
[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

23.    Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the Frist Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

24.    Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

25.    Plaintiff John Roe AJ 1 was a minor child and a member, prospective member, or repeated invitee of Defendants' Church, in Vallejo, California.  Perpetrator Hawkins was a "Bishop" of the Church and used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by Perpetrator Hawkins began when Plaintiff was just 7 years old. Intent on manipulating Plaintiff's emotions and taking advantage of his innocence, so that he eventually could sexually abuse him, Perpetrator Hawkins exploited Plaintiff's fragile mental state to cause him extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over him. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

26.    Eventually, Perpetrator Hawkins initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by Perpetrator Hawkins, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had never been given the choice but to trust.

27.    Plaintiff is informed and believes and thereupon alleges, that, at all times herein

---

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

mentioned, Defendants knew Perpetrator Hawkins was using his position of authority within The Church of Jesus Christ of Latter-day Saints to groom and to sexually abuse one of its minor members, prospective members, or invitees, Plaintiff, and Defendants failed to take reasonable steps to protect him.

28.    Perpetrator Hawkins engaged in underclothes fondling and anal rape with Plaintiff at various locations, including at Defendants' controlled events and meetings and on Defendants' properties.

29.    From 2000 to 2001, the abuse took place within the "Bishop's" office on Defendants' premises, as well as during a meeting in preparation for one of Defendants' activities.

30.    In 2000 and 2001, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the ongoing verbal, physical and sexual abuse by Perpetrator Hawkins. Perpetrator Hawkins was the leading religious authority within the Vallejo congregation, and thus his actions and conduct were highly visible within the Church and among its congregants. Plaintiff was sexually abused on a repeated basis over the course of a year, almost entirely on Defendants' premises. Much of the abuse took place during the course of meetings between Perpetrator Hawkins and many of the youth members of the Vallejo Church. As such, the abuse occurred not during a singular interview specifically pertaining to Plaintiff, but rather when other members of the congregation were coming and going from the area. Additionally, the incident occurring off Church grounds was during a meeting including other members of the Church and required Perpetrator Hawkins to take Plaintiff to a separate room, leaving the two unsupervised and conspicuously absent. Altogether, each incident of abuse was perpetrated on Church grounds or in relation to Church activities, at times when other members and leaders were in close proximity to the abuse and occurred repeatedly over a prolonged period of time. As such, Defendants knew, should have known, suspected, or were on notice of Perpetrator Hawkins's sexual abuse of Plaintiff.

31.    During the period of abuse in 2000 and 2001, Plaintiff attended Defendants' Church in Vallejo with his great-grandparents, who were devout and involved members of the faith. While only 7 years old, Plaintiff was called for a meeting with Perpetrator Hawkins, the "Bishop" and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

religious leader of the ward. This was one in a series of meetings being held between Perpetrator Hawkins and the young children within the congregation. When it was Plaintiff's turn to be called into Perpetrator Hawkins's office, he was immediately taken aback when Perpetrator Hawkins began touching Plaintiff's inner thighs and caressing his genitals over his clothing. Perpetrator Hawkins assured Plaintiff that this was part of a "prayer process." Being an extremely young child and knowing "Perpetrator Hawkins" was the ultimate authority within the ward, Plaintiff sat through the ordeal before leaving. During their next meeting, Perpetrator Hawkins picked up where he left off, but on this occasion forced Plaintiff's hand to fondle his genitals, while also fondling the Plaintiff. This pattern repeated several times over the course of a year, during which the abuse further escalated. On one occasion, youth members of the Church were preparing for a camping trip at a residence in the area. Perpetrator Hawkins, as part of or in addition to his role as "Bishop," also served as a youth leader within the ward. While in this residence, Perpetrator Hawkins led Plaintiff to a separate room in the house and ordered Plaintiff to remove his clothing. Then, Perpetrator Hawkins began fondling Plaintiff's nude genitals before proceeding to sodomize Plaintiff. This extreme sexual misconduct further expanded to the Church grounds. During one incident in Perpetrator Hawkins's office, Plaintiff was given something to drink, believed to be alcoholic in nature. Thereafter, Perpetrator Hawkins began fondling Plaintiff under his clothing, forcing the Plaintiff to do the same to him. Perpetrator Hawkins again anally raped Plaintiff. He told the Plaintiff that he could not speak of the rape, and threatened the Plaintiff that he would go to Hell. Each time Plaintiff had been sexually assaulted, the abuse was realized not in an isolated setting, but in connection to Defendants' meetings and activities involving at least several other Church members also present at the abuse locations. The overt warning signs that Plaintiff was being harassed and possibly harmed – including the frequency and length of Plaintiff's meetings with Perpetrator Hawkins and Plaintiff's removal to unsupervised locations – were disregarded and ignored by Defendants, allowing the abuse to continue uninterrupted and unabated for a full year.

32.     Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records

are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

33.     Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for **"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."** All annotations placed on a member's record are approved by the First Presidency.

34.     Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

35.     The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."  In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

36.    In reality, the Church primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah.  Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

37.    Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

38.    In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

39.    In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

40.    Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed Perpetrator Hawkins to continue completely unhindered and protected, even in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors,

---

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

or personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and unforgiveable acts of Perpetrator Hawkins, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

41. At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises and other locations allowing unsupervised access to youth members and invitees were to sexual abuse and sexual predators, and that sexual predators, such as Perpetrator Hawkins in particular, had apparent, if not actual, authority within the Church community, on Church premises, and at the aforementioned related locations, while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, Perpetrator Hawkins, systematically and continuously leveraged any and all authority which the title and association with the Church, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members, prospective members, or invitees of the Church under the supervision of Perpetrator Hawkins or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members, prospective members, or invitees and did harm at least one of them, this Plaintiff.

42. Defendants provided direct access to a large youth community wherein a danger to the community, Perpetrator Hawkins, wielded power over the Plaintiff.

43. Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Perpetrator Hawkins was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that Perpetrator Hawkins was engaging in inappropriate behavior and conduct with minor children, including Plaintiff, at The Church's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

44. Prior to, during, and after Perpetrator Hawkins's sexual assault and/or sexual abuse,

and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrator Hawkins's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

45. Notwithstanding their knowledge of Perpetrator Hawkins's sexual assault and/or sexual abuse, and molestation of Plaintiff and any other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Perpetrator Hawkins, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

46. Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator Hawkins.

47. As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator Hawkins's unlawful and inappropriate misconduct, Perpetrator Hawkins was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

48. Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator Hawkins because, inter alia, Defendants:

    a) Negligently hired, supervised, retained, monitored, and/or investigated Perpetrator Hawkins.

    b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

    c) Negligently and/or intentionally failed to report the known and/or reasonably

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

49.     Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Perpetrator Hawkins's conduct harder to detect including, but not limited to:

a)  Permitting Perpetrator Hawkins to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Hawkins sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b)  Permitting Perpetrator Hawkins continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrator Hawkins's misconduct that created a risk of childhood sexual assault.

c)  Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Hawkins had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d)  Holding out and affirming Perpetrator Hawkins to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e)  Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrator Hawkins with minor children.

f)  Failing to implement a system or procedure to supervise or monitor employees,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

50.     Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report Perpetrator Hawkins to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Plaintiff, thereby allowing the assault to occur and to continue unabated.

51.     Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

52.     Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

53.     The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

### (Plaintiff Against All Defendants and DOES 4-100)

54.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

55.     Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of the perpetrator by way of the special relationship existing between those individuals.

56.     Defendants knew or should have known of Perpetrator Hawkins's misconduct and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

inappropriate sexual behavior directed by Perpetrator Hawkins to minor Plaintiff John Roe AJ 1.

57.     Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John Roe AJ 1 or his parents regarding the abuse, despite having a legal duty to do so.

58.     As a result of Defendants' negligence, Plaintiff John Roe AJ 1 was sexually abused by Perpetrator Hawkins.

59.     Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

60.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION
## NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants and DOES 4-100)

61.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

62.     Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Perpetrator Hawkins, on Defendants' premises and other locations allowing unsupervised access to youth members or invitees. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like Perpetrator Hawkins, a figure of authority for the Defendants' church community shared with

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1 | Plaintiff.

2 | 63.     Defendants breached their duty to properly and adequately supervise, monitor and

3 | protect Plaintiff by, in part, ignoring clear and obvious signs that Perpetrator Hawkins was engaged

4 | in repeated inappropriate and harassing relationships with Plaintiff; allowing Plaintiff to spend

5 | unsupervised one-on-one time with Perpetrator Hawkins; ignoring and turning a blind-eye to

6 | Plaintiff's whereabouts and wellbeing, so that he could be with Perpetrator Hawkins; and allowing

7 | Perpetrator Hawkins to repeatedly sexually harass and abuse the minor Plaintiff on the Church

8 | premises and elsewhere while under the unsupervised control of Perpetrator Hawkins.

9 | 64.     Had Defendants adequately and properly supervised, monitored, and protected its

10 | students, Plaintiff would not have been harmed.

11 | 65.     Defendants also recklessly and negligently failed to implement and/or enforce

12 | policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth

13 | community, which fell well below the standard of care.

14 | 66.     Had Defendants, each of them, adequately performed their duty and responsibility,

15 | then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual

16 | assault and harassment he endured, and which still impacts his life today, as alleged herein.

17 | 67.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent

18 | injuries including, but not limited to, physical and mental pain and suffering, severe emotional

19 | distress, psychological harm, physical injuries, past and future costs of medical care and treatment,

20 | and past and future loss of earnings and earning capacity, and other damages, in an amount not yet

21 | ascertained, but which exceed the minimum jurisdictional limits of this Court.

22 | **THIRD CAUSE OF ACTION**

23 | **SEXUAL ABUSE OF A MINOR**

**(Plaintiff Against All Defendants and DOES 4-100)**

24 |

25 | 68.     Plaintiff re-alleges and incorporates by reference herein each allegation contained

26 | herein above as though fully set forth and brought in this cause of action.

27 | 69.     While Plaintiff was a member at Defendants' Church, Perpetrator Hawkins took

28 | advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

70.     Defendants ratified Perpetrator Hawkins's sexual abuse of Plaintiff because Defendants had knowledge that he had harassed and potentially harmed Plaintiff, and possibly other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Perpetrator Hawkins to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge Perpetrator Hawkins; as such, they instead accepted and thus ratified his conduct.

71.     At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified Perpetrator Hawkins's criminal conduct and adopted it as if it were their own conduct.

72.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

73.     In committing the acts described herein, the conduct of Perpetrator Hawkins, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, The Church, The Temple Corporation and The Napa California Stake.

## FOURTH CAUSE OF ACTION
### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE
### (Plaintiff Against All Defendants and DOES 4-100)

74.     Plaintiff re-alleges and incorporates by reference herein each allegation contained

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

herein above as though fully set forth and brought in this cause of action.

75.     Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

76.     During the time Plaintiff was being sexually abused by Perpetrator Hawkins, Defendants knew or should have known of any complaints of serious misconduct made against Perpetrator Hawkins, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Perpetrator Hawkins.

77.     Instead, Defendants blamed and threatened Plaintiff for compromising Perpetrator Hawkins' position in the Church and authority within the Church community. Plaintiff was left to believe he would go to Hell for disclosing the abuse, while Perpetrator Hawkins was allowed to continuously assault Plaintiff with impunity. Perpetrator Hawkins used the power and authority provided him by Defendants to abuse Plaintiff, knowing he had safe harbor with Defendants by virtue of his position in their Church.

78.     Defendants knew or should have known that Perpetrator Hawkins engaged in repeated misconduct against male members prospective members, or invitees of the community, one being Plaintiff.

79.     Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Perpetrator Hawkins on Defendants' premises.

80.     Had Defendants, each of them, properly investigated, supervised, trained, and monitored Perpetrator Hawkins's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Perpetrator Hawkins to continue, unhindered, with his predatory conduct directed towards underage members prospective members, or invitees of the Church community, including Plaintiff.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

81.     Defendants negligently hired, supervised, retained, monitored, and otherwise employed Perpetrator Hawkins and negligently failed to ensure the safety of a minor community member, prospective member, or invitee in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

82.     Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Perpetrator Hawkins.

83.     Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Bishops' and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

84.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

### (Plaintiff Against All Defendants and DOES 4-100)

85.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

86.     Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

87.     Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

including Perpetrator Hawkins; by failing to inform and educate him on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including Perpetrator Hawkins, on Defendants' sexual harassment policies.

88.     As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 4-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by Perpetrator Hawkins.

89.     Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

90.     As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SIXTH CAUSE OF ACTION

### BREACH OF MANDATORY DUTY:

### FAILURE TO REPORT SUSPECTED CHILD ABUSE

### (Plaintiff Against All Defendants and DOES 4-100)

91.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

92.     Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

93.     Defendants, acting through their employees, had, or should have had a reasonable suspicion that Perpetrator Hawkins was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

94.     Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

95.     By failing to report suspected child abuse, Defendants allowed Perpetrator Hawkins to continue, unhindered, in his abuse of minor children, including Plaintiff.

96.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Roe AJ 1 prays for judgment against Defendants The Church of Jesus Christ of Latter-day Saints, Temple Corporation of The Church of Jesus Christ of Latter-day Saints,  The Napa California Stake, The Church of Jesus Christ of Latter-day Saints, their employees and/or agents, and DOES 4 through 100, and each of them, as follows:

1.  For an award of special (economic) and general (non-economic) damages according to proof;

2.  Attorney's fees;

3.  For costs of suit incurred herein; and

4.  For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Dated:                          **SLATER SLATER SCHULMAN LLP**


By: _____
Michael W. Carney
Lauren A. Welling
Sarah Kissel Meier
Attorneys for Plaintiff

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573